UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN DERAFELO, : | |
|    Plaintiff, : | |
| : | |
| v.  : | Civ. No. 3:10-cv-207 (CSH) |
| : | |
| ROBERT LITTLEJOHN; : | |
| JOHN O'MEARA; : | |
| CHRISTOPHER TERRELL; : | |
| RAY BELLE; : | |
| and ROBERT HOPF[1] : | |
|    Defendants. : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**HAIGHT, Senior District Judge:**

On February 8, 2010, the Plaintiff, Susan DeRafelo, filed a complaint against Robert Littlejohn, John O'Meara, Christopher Terrell, and Ray Belle, police officers employed by the City of Stamford (the "Officers"), as well as against Robert Hopf, a bartender at the Court Square Café in Stamford (collectively, the "Defendants"). In her complaint, the Plaintiff asserted 42 U.S.C. § 1983 (2006) claims against the Officers for excessive force, false arrest, false imprisonment, and malicious prosecution, as well as state law claims for assault and battery, false imprisonment, and intentional infliction of emotional distress. (Compl. ¶¶ 15-16.) The Officers now move, pursuant

---

[1] The case caption still refers to this named Defendant as "Robert Hope," notwithstanding the Court (Droney, J.) granting the Plaintiff's motion to correct the complaint to reflect the correct spelling, "Robert Hopf." DeRafelo v. Littlejohn, 3:10-cv-207 (CSH), ECF No. 16 (D. Conn. May 28, 2010). The Clerk is directed to correct the case caption to reflect the correct spelling.

1

to Federal Rule of Civil Procedure 56, for partial summary judgment on all the Plaintiff's claims except her claim for excessive force[2] [Doc. No. 33]. For the reasons stated herein, the Officers' motion for summary judgment [Doc. No. 33] is **denied**.

I.     BACKGROUND

The Plaintiff's claims arise out of an altercation between the Plaintiff and the Officers. The altercation resulted from a dispute between the Plaintiff and Hopf about the Plaintiff's bill at a Stamford tavern. This ruling will briefly summarize the evidence about this encounter, reserving some facts for discussion in relation to resolving the merits of the Officers' motion. At the summary judgment stage, this Court views the record in the light most favorable to the non-moving party, here the Plaintiff. See Terry v. Ashcroft, 336 F.3d 128, 139 (2d Cir. 2003).

On September 24, 2008, the Plaintiff ordered three glasses of white wine, costing a total of $18.00, at the Court Square Café in Stamford. (Def.'s Local 56(a)(1) Stmt. ¶ 1.) After Hopf, the bartender, became verbally aggressive towards her and her companions, the Plaintiff decided to leave.[3] (Def.'s Mot. for Summ. J. Ex. B (the "DeRafelo Dep."), at 16:15-17:21.) The Plaintiff placed a $20.00 bill on the bar, next to her other belongings. Id. at 16:19, 18:15-25. Hopf then

---

[2] Although the Officers' summary judgment briefing expressly excepts the Plaintiff's excessive force claim, it also does not address the Plaintiff's state law claims for assault and battery and false imprisonment.

[3] The Plaintiff and Hopf apparently did not get along. The Plaintiff had complained to the bar's management about Hopf's inappropriate behavior several months prior to this incident. (DeRafelo Dep. at 16:23-17:12.) Hopf appears to have discovered that the Plaintiff made this complaint, and, when he saw the Plaintiff on September 24, "said [the Plaintiff] made complaints about him, that [the Plaintiff] shouldn't complain about him, no one liked [the Plaintiff], [the Plaintiff] make[s] people sick, [and the Plaintiff] should never go [to the Court Square Café]." (DeRafelo Dep. at 17:13-15.)

threatened to throw some of the Plaintiff's belongings into the tavern's furnace. Id. at 17:23-18:14. The Plaintiff took her belongings, and the $20.00, and walked out of the building into a patio or outdoor courtyard area which was also part of the bar.[4] Id. at 18:15-25.

Hopf followed her. (Def.'s Local 56(a)(1) Stmt. ¶ 3.) Once outside in the outdoor courtyard, Hopf shouted to two nearby police officers, Littlejohn and O'Meara. Id. Hopf told Littlejohn and O'Meara that the Plaintiff had not paid her bill. Id. ¶ 4. O'Meara told the Plaintiff that Hopf wanted her arrested for not paying her bill, and the Plaintiff replied that she intended to pay. (DeRafelo Dep. at 23:7-12.) The Plaintiff showed her $20.00 bill to O'Meara. Id. at 23:14-15. When O'Meara asked Hopf if he would accept this payment, Hopf refused. Id. at 23:14-24:5. During this exchange, the Plaintiff remained in the outdoor courtyard on the bar's premises. Id. at 24:3-5.

O'Meara called another police car, and Littlejohn told the Plaintiff to stay where she was. Id. at 25:12-16. The Plaintiff stood by some landscaped plantings in the outdoor courtyard, her money in hand. Id. at 25:15-27:9. Several other police officers, including Terrell and Belle, arrived. Id. at 33:10-34:24. Littlejohn then approached the Plaintiff and again told her not to leave, and the Plaintiff took two or three steps backwards. Id. at 27:12-19, 29:2-4. Littlejohn pushed the Plaintiff in the chest and bent her over a "half-wall." Id. at 27:20-28:3. The Officers then continued pushing the Plaintiff into the wall and twisting her arms behind her back. Id. at 28:3-8. The Plaintiff screamed for help, and O'Meara punched her in the mouth. Id. at 28:8, 28:18-24. The Plaintiff does

---

[4] The parties dispute whether the Plaintiff left the tavern's premises. (Compare DeRafelo Dep. at 18:21 ("I didn't leave the premises.") with Def.'s Mot. for Summ. J. Ex. A (the "Police Report"), at 4 (Plaintiff "exited the bar leaving the café."). Given the posture of this matter, the Court resolves this factual dispute in the Plaintiff's favor and concludes, for purposes of resolving this motion, that the Plaintiff did not leave the premises of the bar.

not "remember resistance," id. at 37:18, but "guess[es] [she] wasn't relaxing her arms," id. at 36:10-11.[5] Finally, Belle told the Plaintiff to relax her arms; the Officers then handcuffed her. Id. at 30:11-16.  The Plaintiff estimates that, between the time Littlejohn approached the Plaintiff and the time the Officers handcuffed her, about two minutes elapsed. Id. at 35:23-36:11.

The Officers arrested the Plaintiff and transported her to a police station. (Police Report at 2.) There, the Plaintiff was charged with larceny in the sixth degree, Conn. Gen. Stat. § 53a-125b,[6] and interfering with an officer, Conn. Gen. Stat. § 53a-167a.[7] Id. at 1. The Plaintiff paid the outstanding $18.00 bill at the tavern the following day. (DeRafelo Dep. at 41:15-19.) Although no evidence appears in the record about the disposition of the criminal charges against the Plaintiff, the Plaintiff represents, in her briefing on this motion that the charges were "immediately nolled." (Pl.'s Br. in Opp. to Mot. for Partial Summ. J. at 1.)

---

[5] The parties dispute whether and to what extent the Plaintiff resisted the Officers' attempts to handcuff her. (Compare DeRafelo Dep. at 37:18 with Police Report at 1-2 ("Officer O'Meara went to handcuff her and that's when she started yell (sic) and struggle.").) Again, given the posture of this matter, the Court resolves this factual dispute in the Plaintiff's favor and concludes, for purposes of resolving this motion, that the Plaintiff offered no resistence beyond not relaxing her arms.

[6] "A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is five hundred dollars or less." Conn. Gen. Stat. § 53a-125b(a). "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." Conn. Gen. Stat. § 53a-119. Specifically, larceny includes "theft of services," such as "when . . . [w]ith intent to avoid payment for restaurant services rendered . . . he avoids such payment by unjustifiable failure or refusal to pay, by stealth, or by any misrepresentation of fact which he knows to be false." Conn. Gen. Stat. § 53a-119(7).

[7] "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties." Conn. Gen. Stat. § 53a-167a(a).

On February 8, 2010, the Plaintiff filed this action. In her complaint, she alleges (1) 42 U.S.C. § 1983 claims against the Defendants for unreasonable force, false arrest, false imprisonment, and malicious prosecution in violation of the Fourth Amendment to the United States Constitution; and (2) state law claims for assault and battery, false imprisonment, and intentional infliction of emotional distress. (Compl. ¶¶ 15-16.)

## II.   STANDARD

The standard for deciding the Officers' motion is familiar. Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists, and summary judgment is therefore appropriate, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). But "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & Hudson Railway Co. v. Consolidated Rail Corp., 902 F.2d 174, 178 (2d Cir.1990).

## III.   DISCUSSION

The Officers principally argue that partial summary judgment in their favor is appropriate because (1) the Officers had probable cause to arrest the Plaintiff for larceny and interfering with an officer; (2) even in the absence of actual probable cause, a reasonable officer could have concluded that he or she had probable cause in these circumstances such that qualified immunity shields the Officers from suit; and (3) the Officers' conduct was not extreme and outrageous such that

intentional infliction of emotional distress liability is impermissible.  The Court concludes that, on this record, sufficient disputed material facts exist about these matters to preclude partial summary judgment.

### A.       42 U.S.C. § 1983 Claims

Government officials are subject to suit in their individual capacities for violations of constitutional rights committed in the course of their employment.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes."  Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979).  The challenged conduct must be "attributable at least in part to a person who was acting under color of state law" and "the conduct [must have] deprived the plaintiff of a right guaranteed under the Constitution of the United States."  Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999).

In any § 1983 case on summary judgment, the court must determine whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendants'] conduct violated a constitutional right."  Saucier v. Katz, 533 U.S. 194, 201 (2001).  The Court must also consider whether qualified immunity shields individual defendants from liability.  Id.  The analysis may take place in any order "in light of the circumstances in the particular case at hand," Pearson v. Callahan, 555 U.S. 223, 236 (2009), so long as the immunity questions are resolved "at the earliest possible stage in litigation," id. at 232.

#### 1.       False arrest and false imprisonment

In analyzing claims alleging the constitutional torts of false arrest or false imprisonment, courts " generally look[] to the law of the state in which the arrest occurred."  Davis v. Rodriguez,

364 F.3d 424, 433 (2d Cir. 2004). "Connecticut treats the torts of false arrest and false imprisonment identically. See Green v. Donroe, 186 Conn. 265, 267, 440 A.2d 973 (1982); Outlaw v. City of Meriden, 43 Conn. App. 387, 392, 682 A.2d 1112 (1996)." El Badrawi v. Dep't of Homeland Sec., 579 F. Supp. 249, 264 n.16 (D. Conn. 2008). Under Connecticut law, such claims require the plaintiff to establish, among other elements, that "the arrest was not supported by probable cause." Shattuck v. Town of Stratford, 233 F. Supp. 2d 301, 306-307 (D. Conn. 2002) (quoting Arum v. Miller, 193 F. Supp. 2d 572, 585 (E.D.N.Y. 1985)). The existence of probable cause for the arrest or imprisonment is a complete defense to a claim of false arrest or false imprisonment under 42 U.S.C. § 1983. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

"Probable cause requires only a "probability or a substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 244 (1983). Although a probable cause determination must be based on the totality of the evidence at the time of arrest, Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir. 1989), "[e]vidence is not required to rise to a significant level of trustworthiness in order to meet the probable cause standard," Connecticut v. Lewis, 245 Conn. 779, 808, 717 A.2d 1140 (1998). "It is well-settled that police officers have probable cause to arrest if they receive information from a complaining victim or other witness whom they reasonably believe to be telling the truth." Little v. City of New York, 487 F. Supp. 2d 426, 439 (S.D.N.Y. 2007); see also Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity.").

As to the arrest for larceny, the Officers unquestionably had information from a putative eyewitness, Hopf, that the Plaintiff had left the inside of the bar without paying her bill. (Def.'s

Local 56(a)(1) Stmt. ¶ 4.) What remains disputed is whether the specific circumstances, particularly the Plaintiff's remaining in the bar's outdoor courtyard instead of leaving the premises altogether (DeRafelo Dep. at 18:21), and repeated offer to settle her bill, id. at 23:7-15, raised doubts about Hopf's veracity such that probable cause could not arise solely from his complaint to the Officers. This record therefore raises an appropriate jury issue about whether the Officers had probable cause to arrest the Plaintiff for larceny.

As to the Plaintiff's arrest for interfering with an officer, the record contains contradictory evidence about whether and to what extent the Plaintiff resisted the Officers' attempts to handcuff her. (Compare DeRafelo Dep. at 37:18 with Police Report at 1-2 ("Officer O'Meara went to handcuff her and that's when she started yell (sic) and struggle.").) Because a reasonable juror could credit either account, sufficient disputed facts exist about whether the Officers had probable cause to arrest the Plaintiff because she "obstruct[ed] resist[ed], hinder[ed] or endanger[ed] any peace officer . . . in the performance of such peace officer's . . . duties." See Conn. Gen. Stat. § 53a-167a(a).

Genuine issues of material fact therefore exist about whether the Officers had probable cause to arrest the Plaintiff for either of the two crimes with which she was charged.[8] Summary judgment on this basis is not warranted.[9]

---

[8] The record contains some indication that the Officers themselves doubted the validity of the decision to arrest the Plaintiff. (See DeRafelo Dep. at 40:20-41:11 (The Plaintiff heard Belle refer to the arrest using a common vulgar term denoting skepticism).)

[9] The Officers have not argued that summary judgment in their favor is appropriate based on the absence of genuine issues of material fact with respect to the other elements of false arrest and false imprisonment claims.

### 2.  Malicious prosecution

To prove a malicious prosecution claim by Connecticut state officials under § 1983, a plaintiff must establish the elements of malicious prosecution under Connecticut law and the deprivation of a Fourth Amendment right.  Rogers v. Apicella, 606 F. Supp. 2d 272, 291 (D. Conn. 2009).  The elements of a malicious prosecution claim in Connecticut include, among others, that "the defendant acted without probable cause."  Bhatia v. Debek, 287 Conn. 397, 404, 948 A.2d 1009 (2008) (quoting McHale v. W.B.S. Corp., 187 Conn. 444, 447, 446 A.2d 815 (1982)).  Like a false arrest claim, the existence of probable cause to believe that a defendant could be successfully prosecuted is a complete defense to a malicious prosecution claim.  See Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414-17 (2d Cir. 1999).[10]  But if no probable cause existed to arrest for the crime charged, it necessarily means that the same fact pattern does not support probable cause to believe that a defendant could be successfully prosecuted.  Id. at 417.

Here, this Court has already concluded that genuine issues of material fact exist about whether the Officers had probable cause to arrest the Plaintiff for larceny or for interfering with an officer.  The Officers have pointed to no additional information which came to their attention after the arrest but before the initiation of criminal proceedings which would have made a prosecution more likely to succeed.  Because a reasonable jury could conclude that the Officers lacked probable

---

[10] Although Posr applied New York law to a malicious prosecution claim, "there does not appear to be any relevant distinction in the law of malicious prosecution in New York and Connecticut."  Szekeres v. Schaeffer, Nos. 3:01-cv-2099 (MRK) & 3:01-cv-2108 (MRK), 2004 WL 722240, at *9 (D. Conn. Mar. 26, 2004); compare Lo Sacco v. Young, 20 Conn. App. 6, 19-20, 564 A.2d 610 (1989) (elements of malicious prosecution under Connecticut law) with Broughton v. State, 37 N.Y.2d 451, 457, 335 N.E.2d 310 (1975) (substantially identical elements under New York law).

cause to arrest the Plaintiff for these crimes, it necessarily follows that a reasonable jury could conclude that the Officers also lacked probable cause to initiate criminal proceedings based on the same facts. See id. at 417. Summary judgment is not proper.[11]

### 3. Qualified immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson, 555 U.S. at 231 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity shields a police officer from suit unless "the facts alleged show the officer's conduct violated a constitutional right," and if so, "the right was clearly established," such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201-202 (2001). Thus, qualified immunity protects a defendant if "(1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." Hartline v. Gallo, 546 F.3d 95, 102 (2d Cir. 2008) (citations omitted).

The Officers appear to concede that the Plaintiff's § 1983 claims implicate clearly established constitutional rights (see Def.'s Mem. in Supp. of Mot. for Summ. J. at 11), and, instead, argue only that it was objectively reasonable for the Officers to arrest and charge the Plaintiff because they had "arguable probable cause" to do so, id. (citing Hunter v. Bryant, 502 U.S. 224, 227 (1995) (false

---

[11] Again, the Officers have not argued that summary judgment in their favor is appropriate based on the absence of genuine issues of material fact with respect to the other elements of a malicious prosecution claim.

arrest); Jean v. Montina, 412 F. App'x 352, 354 (2d Cir. 2011) (malicious prosecution)).  On this record, a reasonable juror could credit the Plaintiff's account that she never left the tavern's premises (DeRafelo Dep. at 18:21), never refused to pay her bill, id. at 23:7-15, and did not resist, hinder, obstruct, or endanger the officers, id. at 37:18.  A reasonable juror, crediting the Plaintiff's account, could also conclude that it was objectively unreasonable for the Officers to believe that they had probable cause to arrest and initiate criminal proceedings against the Plaintiff.  Genuine issues of material fact therefore exist about the objective reasonableness of the Officers' conduct, and the record therefore does not warrant summary judgment in the Officers' favor on this basis.  See McKelvie v. Cooper, 190 F.3d 58, 53 (2d Cir. 1999) ("Where, as here, there are facts in dispute that are material to a determination of reasonableness, summary judgment on qualified immunity grounds is not appropriate.").

>    B.    State Law Claims
>>        1.    **Intentional infliction of emotional distress**

"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . .  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210-11, 757 A.2d 1059 (2000) (internal citations and quotation omitted).  "Whether an actor's conduct is 'extreme and outrageous' is an issue for the Court in the first instance and a factual question for the jury '[o]nly where reasonable minds disagree' as to whether 'the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" Rogers v. Apicella, 606 F. Supp. 2d 272,

293 (D. Conn. 2009) (quoting Appleton, 254 Conn. at 211). "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." Restatement (Second) of Torts § 46 cmt. e (1965).[12]

Here, reasonable minds could disagree about whether the Officers' actions were sufficiently extreme and outrageous to support liability, and a reasonable juror could conclude that they were. On this record, a reasonable person could draw the inference that the Officers arrested and charged the Plaintiff at Hopf's behest, not because she had done anything improper or illegal. (See DeRafelo Dep. at 21:18-25:24 (discussing Hopf's prior relationship with O'Meara and Hopf's insistence that the Officers arrest the Plaintiff).) A reasonable person could also infer, from the record, that the Officers deliberately included false information in their police report. See id. at 43:3-47:21 (discussing discrepancies between the Plaintiff's recollection and the Police Report). A reasonable juror could conclude that such abuse of official government authority by the Officers, if proved, constitutes extreme and outrageous conduct. See Hyde v. Pysz, No. CV-05-4003674, 2006 WL 894926, at *5 (Conn. Super. Mar. 22, 2006) (citing McKelvie, 190 F.3d at 63; Stack v. Jaffee, 248 F. Supp. 2d 100, 104-105 (D. Conn. 2003)). The record therefore presents sufficient evidence of extreme and outrageous conduct for a jury to find liability for intentional infliction of emotional distress. Summary judgment is not proper.[13]

---

[12] "Connecticut courts have relied on the Restatement (Second) of Torts for the meaning of 'extreme and outrageous conduct.'" Franco v. Yale Univ., 161 F. Supp. 2d 133, 141 (D. Conn. 2001).

[13] Again, the Officers have not argued that summary judgment in their favor is appropriate based on the absence of genuine issues of material fact with respect to the other elements of a

**2.     Other state law claims**

The Plaintiff also brought state law claims for assault and battery and false imprisonment. (Compl. ¶ 16.) The Officers have not addressed these claims in their summary judgment motion or briefing and have not argued that the record warrants summary judgment in their favor on these claims. In the face of such inadequate briefing, the Court therefore does not address these claims and will not grant summary judgment in the Officers' favor on these claims.

**IV.     CONCLUSION**

For these reasons, the Officers' motion for summary judgment [Doc. No. 33] is **DENIED**.

It is SO ORDERED.

Dated at New Haven, Connecticut, this 27th day of June, 2012.

*/s/Charles S. Haight, Jr.*
Charles S. Haight, Jr.
Senior United States  District Judge

---

intentional infliction of emotional distress claim.